UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIAN MING LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-0024 |
| | § | |
| TAIPEI ECONOMIC AND CULTURAL | § | |
| REPRESENTATIVE OFFICE, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant's Motion to Dismiss and Memorandum in Support (Doc. No. 16). For the reasons set forth below, the Court orders limited discovery on the matter.

### I.   BACKGROUND

This suit involves claims of age discrimination in the workplace. Taking the allegations in the complaint as true, Plaintiff Lian Ming Lee ("Lee" or "Plaintiff") began working for the Houston branch of the Taipei Economic and Cultural Representative Office ("TECRO" or "Defendant") in the early 1990s. (Compl. ¶ 5.) Lee's job tasks included maintenance, repair, clerical, janitorial, and driving duties. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss 2.) In December 2007, Lee received a letter from TECRO requiring him to retire because he was over 65 years old. (Compl. ¶ 6.) TECRO asked Lee to sign termination documents and offered him a severance payment. Lee refused to sign the documents. (*Id.* ¶ 7.) He objected to his termination, telling TECRO that United States laws did not allow TECRO to terminate his employment based on age. He told TECRO he was considering a lawsuit. (*Id.* ¶ 8.)

At the end of December 2007, Lee received another letter from TECRO, stating that the earlier correspondence requiring his retirement was revoked. Lee was advised to report to work starting in January 2008. (*Id.* ¶ 9.) When Lee returned to work, however, he was stripped of his normal responsibilities and moved from office to office. (*Id.* ¶ 10.) Later that month, TECRO again asked Lee to sign termination papers, which Lee refused to do. On January 31, 2008, TECRO terminated Lee's employment. (*Id.* ¶ 11.)

Lee filed suit against TECRO, alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Defendant's motion to dismiss followed.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

TECRO moves to dismiss Plaintiff's case for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed fact plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In considering a 12(b)(1) motion, "the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *Williamson*, 645

F.2d at 413)). The plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* (citing *New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)).

### B. Foreign Sovereign Immunities Act

TECRO's argument that subject matter jurisdiction is lacking is predicated on its claim of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.).

The FSIA provides the "sole basis" for exercising jurisdiction over foreign states in United States courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989). Under the FSIA, foreign states are generally immune from jurisdiction. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citing 28 U.S.C. § 1604 (1994)). The Court therefore begins with a presumption of immunity from suit for Defendant. *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007). However, under a handful of statutory exceptions, a district court can exercise jurisdiction over a foreign state. *Id.* The "most significant of the FSIA's exceptions," the one at issue here, "is the 'commercial' exception" contained in 28 U.S.C. § 1605(a)(2), discussed *infra*. *Republic of Argentina v. Weltover*, 503 U.S. 607, 611 (1992).

"The foreign state bears the burden of persuasion on the issue of immunity under the FSIA," but when it makes a prima facie showing of immunity, the burden shifts to the Plaintiff to "com[e] forward with facts showing that an exception applies." *Moran*, 27

3

F.3d at 172 (citing *Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines*, 965 F.2d 1375, 1383 (5th Cir. 1992)).

The parties do not dispute that Taiwan qualifies as a "foreign state" under the FSIA. *See Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 883 (D.C. Cir. 1988) (citing 28 U.S.C. §§ 3303(b)(1), 3314(1)).[1] Additionally, neither party disputes that TECRO qualifies as a "foreign state" under the FSIA, as an "agency or instrumentality" of Taiwan. *Id.* Thus, this Court's analysis focuses on the sole question of whether the FSIA's "commercial activity" exception applies.

### III. ANALYSIS

#### A. The Commercial Activity Exception

Section 1605(a)(2) of the FSIA defines the "commercial activity" exception to sovereign immunity:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

28 U.S.C. § 1605(a)(2). In interpreting this exception, the Fifth Circuit has held that "[f]oreign sovereigns are not immune from judicial process in actions based upon commercial activity that has a jurisdictional nexus with the United States, as defined by the FSIA." *Can-Am Int'l v. Republic of Trinidad and Tobago*, 169 Fed. Appx. 396, 404

---

[1] The Defendant in that case, the Coordination Council for North American Affairs, is the predecessor of the Defendant in this case, the Taipei Economic and Cultural Representative Office. *Taiwan v. U.S. Dist. Court for the N. Dist. of Cal.*, 128 F.3d 712, 714 (9th Cir. 1997).

(5th Cir. 2006), *cert. denied*, 549 U.S. 881 (2006) (citing *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana S.C.*, 923 F.2d 380, 386 (5th Cir. 1991)).

The parties do not dispute that the activity had the requisite jurisdictional nexus with the United States, as all of the events appear to have taken place in the United States. Thus, the Court's task is to determine what the relevant underlying activity is, and whether it is commercial in nature.

### 1. Relevant Activity

The FSIA dictates that the actionable claim must be "based upon a commercial activity." 28 U.S.C. § 1605(a)(2). Therefore, we begin the analysis by identifying the relevant conduct upon which Lee's claims are "based." *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993) (citations omitted). The phrase "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* (citations omitted).

TECRO alleges that the relevant activity here is the "nature of the activity generally performed by the foreign mission, not the nature of the particular activity . . . of the employee." (Def.'s Mot. to Dismiss and Mem. in Supp. 9-10.) TECRO provides an affidavit from the Deputy Director General of the Houston TECRO office which speaks generally to the activities of the office, including issuing passports, fostering bilateral trade through its commercial division, and other consular activities. (Def.'s Reply in Supp. of Def.'s Mot. to Dismiss Ex. A.) From the Court's reading of this affidavit, TECRO argues that the general activities of all five separate divisions of the Houston TECRO office form the basis of the relevant activity.

This argument misses the mark. In deciding the relevant activity upon which Plaintiff's claims are based, the Court must "[i]n particular . . . isolate those specific acts of the named plaintiff's suit." *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1391 (5th Cir. 1985) (citation omitted). Courts cannot focus on the general activities of the mission at large. It must focus on the claims that, if proven, would grant Plaintiff relief. That relevant activity, in an employment case, centers on the employee's work within the mission. *See El-Hadad v. United Arab Emirates*, 496 F.3d 658, 664 & n.1 (D.C. Cir. 2007) (defining the question as whether worker's "employment constitute commercial activity, and focusing "commercial activity analysis on the employment relationship between [employee] and [embassy] as a whole"); *Kato v. Ishihara*, 360 F.3d 106, 111-12 (2d Cir. 2004) (considering the commercial activities of the New York office of the Tokyo Metropolitan Government because plaintiff engaged in marketing and business activities on their behalf); *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 464 (4th Cir. 2000); *Holden v. Canadian Consulate*, 92 F.3d 918, 921-22 (9th Cir. 1996) (examining the nature of employee's work, rather than the general activities of the consulate); *Segni v. Commercial Office of Spain*, 835 F.2d 160, 165 (7th Cir. 1987) (citations omitted) (rejecting the notion that mere employment with a commercial division automatically brought case under "commercial activity" exception and instead focusing on "the nature of [employee's activities] in order to determine whether they are governmental or private").

The relevant activity in this case is the nature of Lee's employment with TECRO, and not TECRO's general activities. To hold otherwise would allow all foreign missions to evade review by allowing them to offset an employee's specific duties with the

6

organization's overall diplomatic role, even if the employee does nothing related to that role.

## 2. Whether Relevant Activity is Commercial

Second, the Court must determine whether the relevant activity is governmental or commercial in nature. The FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Courts must look to the "nature" of an activity rather than its "purpose" in determining whether it is commercial. *Id.* The relevant question is whether "the particular actions that the foreign state performs . . . are the *type* of actions by which a private party engages in 'trade and traffic or commerce,'" rather than peculiarly sovereign actions that may not be exercised by a private party. *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992).

The legislative history of the FSIA provides examples of governmental versus commercial activity in the employment context, listing "the employment of diplomatic, civil service, or military personnel" as governmental activity, and "employment or engagement of laborers, clerical staff of public relations or marketing agents" as examples of commercial activity. H.R. Rep. No. 94-1487, at 16 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6615. In the employment context, many courts have taken the view, based on this legislative history, that a foreign state's civil service and diplomatic employees do not qualify for the "commercial activity" exception. *See, e.g., El-Hadad v. United Arab Emirates*, 496 F.3d 658, 664 (D.C. Cir. 2007) (collecting cases). Where the employee is not a civil servant or diplomatic personnel, some courts hold that the employment falls under the "commercial activity" exception and the suit may go forward,

7

*see Holden v. Canadian Consulate*, 92 F.3d 918, 921-22 (9th Cir. 1996); others go on to examine whether the non-civil service employment "constituted commercial activity." *El Hadad*, 496 F.3d at 664 (citations omitted).

Examining the facts of this case, it is unclear whether Lee was classified as a civil servant. Plaintiff alleges that Lee was an American citizen non-civil service employee who performed a variety of maintenance, labor, and driving tasks around the Houston TECRO office. Plaintiff claims that Lee was "never involved in matters of a diplomatic nature." (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss 4.) Defendant counters that Plaintiff, a dual citizen, has "pled nothing to show that [his] activities, as TECRO's chauffer, are "commercial activities" as opposed to activities supporting [TECRO's] diplomatic mission." (Def.'s Mot. to Dismiss and Mem. in Supp. 20.) Defendant also argues that the letter that Lee received from TECRO requiring him to retire suggests that Lee was in Taiwan's civil service, as it discusses the mandatory age requirement promulgated by the Ministry of Foreign Affairs. *Id.*

From Lee's affidavit, the Court would infer that his employment appears to be mostly commercial in nature. Lee drove the Director General of the Houston TECRO office to and from work every day, maintained his house, made bank deposits into the office's bank account, and performed general errands around the office. (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss Ex. A.) These activities appear to be the "*type* of actions by which a private party engages in 'trade and traffic or commerce,'" namely, the private hiring of a maintenance man and driver or messenger to support a business.

The Court, however, is mindful that "FSIA immunity is immunity not only from liability," but also from the burdens of litigation. *Kelly v. Syria Shell Petroleum*

*Development B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) (citing *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992)). Accordingly, the Court must be certain that it has subject matter jurisdiction before allowing the case to move forward with unlimited discovery. When the Court does not have the facts "crucial to an immunity determination," it may order discovery "circumspectly" to satisfy its analysis that it has subject matter jurisdiction. *Kelly*, 213 F.3d at 849 (quotations omitted). Here, the Court feels that limited discovery is warranted so it may better understand the nature of Lee's employment at the Houston TECRO office.

It is hereby ordered that, within twenty days, both Plaintiff and Defendant answer the following questions, with documentation as appropriate. The parties may provide affidavits in support of their responses.

1. How does Taiwanese law define civil service?

2. What was Lee's job title?

3. Was Lee considered a civil servant?

4. How was Lee hired with the TECRO Houston office and on what terms? Did he apply for the job? Did he take any competitive exams? Did he have a contract with TECRO once he began his employment?

5. Does Lee's employment history include any other employment with the Taiwanese or Chinese government?

6. What is Lee's citizenship?

7. What was the nature of Lee's work in the TECRO office? The Court has Lee's affidavit, but welcomes supplemental documentation from Plaintiff and any documentation from Defendant. Otherwise, the Court will adopt Lee's affidavit as an accurate description of his duties.

The Court will review these materials and make a final determination on whether it has subject matter jurisdiction.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 8th day of December, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**