UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIAN MING LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-0024 |
| | § | |
| TAIPEI ECONOMIC AND CULTURAL REPRESENTATIVE OFFICE, | § § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Reconsider the Court's Refusal to Dismiss Plaintiff's Claim for Punitive Damages (Doc. No. 51). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Defendant's motion should be granted.

**I.   BACKGROUND**

This suit involves claims of age discrimination in the workplace. The Court set forth the relevant background in two previous orders considering Defendant's motion to dismiss on sovereign immunity grounds. (*See* Doc. Nos. 32 & 39.) The Court requested limited discovery on the matter, and ultimately rejected Defendant Taipei Economic and Cultural Representative Office's ("Defendant" or "TECRO") arguments that the Court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.).

Defendant now moves the Court to reconsider its ruling, to the extent that it refused to dismiss Plaintiff's claim for punitive damages. The Court understood

1

Defendant's motion to dismiss as presenting only the issue of subject matter jurisdiction; it therefore did not take up any question of punitive damages. The Court now considers Defendant's request to rule on whether Plaintiff's punitive damages claim may lie.

## II.     LEGAL STANDARDS

A motion for reconsideration may be made under either Federal Rule of Civil Procedure 59(e) or 60(b).[1]  *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004).  Because of the timing of filing, the Court treats this as a Rule 60(b) motion for reconsideration.  Such a motion must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued."[2]  *Id.*  In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

## III.    ANALYSIS

Defendant contends that its motion to dismiss "expressly sought a ruling" that a punitive damages claim may not be asserted in this case. (Def.'s Mot. to Reconsider the Court's Refusal to Dismiss Pl.'s Claim for Punitive Damages, Doc. No. 51, ¶ 4.) Defendant now asks this Court to rule on that portion of its motion, and hold that it may

---

[1] While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order. *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). If the motion is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *Id.* (internal citations omitted).

[2] Defendant's argument could plausibly be rejected for the failure previously to raise it clearly. The Court concludes, however, that it is not an entirely new argument, and should be addressed on the merits.

2

not be subject to such damages in this case.  It argues that the FSIA does not permit foreign states to be subject to punitive damages (*id.* ¶ 15), and argues further that it qualifies as a foreign state.  Therefore, Defendant seeks dismissal of Plaintiff's punitive damages claim.

Plaintiff counters that Defendant mentioned punitive damages in only one sentence of its motion to dismiss, but offered no briefing on the matter.  On the merits of Defendant's argument, Plaintiff contends that the FSIA excuses only a "foreign state" from punitive damages, but not an agency or instrumentality of the state.  Plaintiff argues that Defendant TECO functions as a consulate of Taiwan would, and is therefore an instrumentality of Taiwan, not "Taiwan" itself.  (Pl.'s Resp. to Def.'s Mot. to Recons. the Court's Refusal to Dismiss Pl.'s Claim for Punitive Damages, Doc. No. 60, at 1.)  Both parties direct this Court's attention to cases addressing the question of whether various state-related entities qualify as "states," such that they are not liable for punitive damages, or "agents or instrumentalities of states," such that punitive damages may lie against them.

The FSIA provides that:

> As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages . . . .

28 U.S.C. § 1606.  Agency, in turn, is defined as any entity:

> (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of

>the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

Section 1603(a) defines "foreign state" as including "agencies and instrumentalities." *Id.* Thus, the Court's previous decision denying sovereign immunity to Defendant did not turn on whether Defendant was a foreign state or an agency or instrumentality—the same result obtained regardless of Defendant's status. With punitive damages, however, the FSIA draws an explicit distinction between the two, thus requiring a determination of Defendant's status. *See Jacobsen v. Oliver*, 451 F. Supp. 2d 181, 195 (D.D.C. 2006) ("Because Section 1603(a) defines 'foreign state' as including 'agencies and instrumentalities,' the distinction between the two is only relevant in the FSIA where explicitly drawn").

Several courts have confronted the question of whether a state-related entity qualifies as the state itself, or rather an agency or instrumentality, in construing provisions of the FSIA that draw a distinction between the two categories. In *Transaero, Inc. v. La Fuerza Aerea Boliviana*, the Court of Appeals for the District of Columbia considered whether the Bolivian Air Force was a "foreign state," or instead an "agency or instrumentality" of the state, for the purposes of 28 U.S.C. § 1608, which lays out the FSIA's service of process requirements. 30 F.3d 148 (D.C. Cir. 1994). The *Transaero* court undertook a lengthy analysis of the background and legislative history of the FSIA, and ultimately concluded that whether the Bolivian Air Force was a "'separate legal person, corporate or otherwise,'" such that it constituted an agency or instrumentality of the state, depended on "whether the core functions of the foreign entity [were] predominantly governmental or commercial." *Id.* at 152. The court held that "armed

4

forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state." *Id.* at 153. The Fifth Circuit later endorsed the *Transaero* court's "core functions" approach in another case dealing with the FSIA's service of process provisions. *Magness v. Russian Fed'n*, 247 F.3d 609 (5th Cir. 2001).[3] In that case, however, the parties agreed on whether various Russian entities qualified as the state itself, or instead constituted separate agencies or instrumentalities. Thus, the Fifth Circuit did not have to apply the *Transaero* rule there.

Applying the *Transaero* and *Magness* test here,[4] the Court concludes that TECRO functions as the state itself, rather than an agency or instrumentality. In 1979, after the United States established relations with the People's Republic of China, it severed diplomatic relations with Taiwan. *Taiwan v. U.S. Dist. Court for the N. Dist. of Cal.*, 128

---

[3] The Fifth Circuit endorsed both the *Transaero* court's approach and a different approach, stating: "Whether an entity is a 'separate legal person' depends upon the nature of its 'core functions'— governmental vs. commercial—*and whether the entity is treated as a separate legal entity under the laws of the foreign state*." *Magness*, 247 F.3d at 613 n.7 (emphasis added). This Court finds it unnecessary to invoke the second approach for several reasons. First, the Fifth Circuit's endorsement of both approaches was made in dicta. The court did not have to determine the status of the relevant Russian entities because the parties in that case agreed. In the absence of binding precedent, this Court considers the *Transaero* approach to defining "agency or instrumentality" to be more sound, and chooses to follow that approach. Second, the Fifth Circuit cites to a New York district court case in endorsing the second approach. That court specifically rejected the *Transaero*'s "core function" test, indicating to this Court that the two approaches sit in tension with one another. *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 684 (S.D.N.Y. 1996). Third, the Second Circuit recently followed the *Transaero* court's approach and implicitly rejected the second approach, cautioning against reading too much into a state entity's separate legal status under the law: "Because 'any nation may well find it convenient (as does ours) to give powers of contract and litigation to entities that on any reasonable view must count as part of the state itself,' giving dispositive weight to such powers would extend the definition of 'agencies or instrumentalities' 'well beyond' the 'public commercial enterprises' that Congress apparently intended to target." *Garb v. Republic of Poland*, 440 F.3d 579, 595 (2d Cir. 2006) (quoting *Transaero*, 30 F.3d at 152). For these reasons, the Court finds the *Transaero* test alone to be sufficient in answering the question before it.

[4] Although those decisions interpreted the FSIA's service of process provisions, subsequent courts have adopted the reasoning therein when construing other FSIA provisions that draw distinctions between a foreign state and an agency or instrumentality of that state. *See, e.g.*, *Crist v. Republic of Turkey*, 107 F.3d 922 (D.C. Cir. 1997) (table decision) ("But the language of the *Transaero* opinion . . . does not support limiting the opinion to the service of process context."); *Jacobsen v. Oliver*, 451 F. Supp. 2d 181, 194-97 (D.D.C. 2006) (applying the *Transaero* test in a question involving punitive damages). Therefore, the Court finds that application of the *Transaero* and *Magness* test is appropriate to the question presented here.

F.3d 712, 714 (9th Cir. 1997). In order to maintain a formal relationship with Taiwan, Congress enacted the Taiwan Relations Act ("TRA"), 22 U.S.C. §§ 3301-3316, to provide "a structure for 'the continuation of commercial, cultural, and other relations between the people of the United States and the people on Taiwan.'" *Id.* (quoting 22 U.S.C. § 3301(a)(2)). "Under the TRA, those relations are to be conducted by a nonprofit corporation called the American Institute in Taiwan (AIT) on behalf of the United States, and by a counterpart" entity on behalf of the people on Taiwan. *Id.* (citations omitted). That counterpart is TECRO, which was originally known as the Coordination Council for North American Affairs ("CCNAA"). *Id.* (citations omitted). "In essence, TECRO performs functions similar to the functions performed by embassies of countries with whom the United States maintains diplomatic relations." *Id.* Thus, although TECRO is called an "instrumentality" of Taiwan in both the legislation establishing the office and subsequent court decisions involving the office, *see, e.g.*, *Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 883 (D.C. Cir. 1988), it does not function as an "agency or instrumentality" as contemplated by FSIA's definition. Instead, TECRO operates as a de facto Taiwanese embassy, offering full consular services, serving as the official trade representative office established by the Ministry of Economic Affairs of Taiwan, and facilitating other cultural and education exchanges. *See* Taipei Economic & Cultural Office in Houston, http://www.roc-taiwan.org/US/HOU/mp.asp?mp=37 (last visited July 4, 2010).

Much like the *Transaero* court's view that armed forces are so intricately bound up with the structure of a state such that they are the state itself, this Court concludes that embassies, or non-embassy offices that establish diplomatic relations between two

countries, constitute a core governmental function and thus qualify as the foreign state itself, rather than a separate agency or instrumentality. Because TECRO performs all the functions of a foreign embassy, which entails exclusively sovereign duties, the Court holds that TECRO is Taiwan itself, rather than a separate agency or instrumentality of Taiwan. Accordingly, pursuant to 28 U.S.C. § 1606, Plaintiff may not recover punitive damages against TECRO.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Reconsider the Court's Refusal to Dismiss Plaintiff's Claim for Punitive Damages (Doc. No. 51) is **GRANTED**, and all punitive damages claims in this case are hereby dismissed. Plaintiff shall file an amended complaint within twenty (20) days of the date of this Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 6th day of July, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.